UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
ex rel SIMEON ANDERSON,
SIMEON ANDERSON on behalf of
himself and others similarly situated
(PLAINTIFF CLASS), GREATER
TRUE WORSHIP CHURCH, on
behalf of itself and others similarly
situated (PLAINTIFF CLASS),

Case No. 2:13-cv-10660

Hon. Bernard A. Friedman

Magistrate Judge Mona K. Majzoub

      Plaintiffs,

v.

CONSUMERS ENERGY
COMPANY, ERIC KEATON,
STEVE STUBLESKI, and
MICHAEL TORREY,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants Consumers Energy Company, Eric Keaton, Steve Stubleski, and

Michael Torrey ("Defendants"), by their attorneys, Barris, Sott, Denn & Driker,

P.L.L.C., request that this Court grant this motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6).  For the reasons set forth in the accompanying brief in support of

this motion, plaintiffs have failed to state a claim upon which relief may be granted

against any of the Defendants.

Pursuant to E.D. Mich. L.R. 7.1(a), counsel for Defendants explained the basis and nature of the motion and requested concurrence from plaintiffs' counsel on April 28, 2014. Plaintiffs' counsel denied concurrence regarding Defendants' arguments that Plaintiffs' failed to a state a claim upon which relief may be granted for specific failures in each of the individual counts. Plaintiffs' counsel, however, refused to respond to Defendants' argument that the filed rate doctrine bars this suit in its entirety without first being able to review the motion with his client. Defendants provided Plaintiffs' counsel with a draft of the motion and brief on April 28, 2014 and requested a response to the request for concurrence by the close of business on May 1, 2014. At the close of business on May 1, 2014, Plaintiffs had not concurred in the relief requested. (Instead, Plaintiffs' counsel requested an additional five days to review Defendants' motion and brief before he allegedly intended to respond).

Respectfully submitted,

BARRIS, SOTT, DENN & DRIKER, PLLC

By: /s/ Melonie L. M. Stothers
    Sharon M. Woods (P22542)
    Melonie L. M. Stothers (P65344)
Attorneys for Defendants
211 West Fort Street, 15th Floor
Detroit, Michigan 48226-3281
(313) 965-9725
E-Mail: swoods@bsdd.com, mstothers@bsdd.com

Dated:  May 2, 2014
439384v1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
ex rel SIMEON ANDERSON,
SIMEON ANDERSON on behalf of
himself and others similarly situated
(PLAINTIFF CLASS), GREATER
TRUE WORSHIP CHURCH, on
behalf of itself and others similarly
situated (PLAINTIFF CLASS),                    Case No. 2:13-cv-10660

Plaintiffs,                                    Hon. Bernard A. Friedman

v.                                             Magistrate Judge Mona K. Majzoub

CONSUMERS ENERGY
COMPANY, ERIC KEATON,
STEVE STUBLESKI, and
MICHAEL TORREY,

Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

QUESTIONS PRESENTED................................................................iv

CONTROLLING AND MOST APPROPRIATE AUTHORITY.............................v

INDEX OF AUTHORITIES .............................................................vi

I.      INTRODUCTION ...............................................................1

II.     STATEMENT OF FACTS ........................................................1

        A.      The Parties.........................................................1

        B.      The Michigan Public Service Commission...........................2

        C.      Anderson's Legal Actions Against Defendants.....................3

        D.      This Lawsuit.......................................................4

III.    ARGUMENT ....................................................................6

        A.      Standard of Review ...............................................6

        B.      Plaintiffs' Amended Complaint Should Be Dismissed Under
                the Filed Rate Doctrine ..........................................7

                1.      The Filed Rate Doctrine..................................8

                2.      The Filed Rate Doctrine Applies to State Rate-Making...........10

                3.      The Filed Rate Doctrine Bars Plaintiffs' Claims.....................12

                4.      Plaintiffs Cannot Save Their Amended Complaint By
                        Claiming They Are Not Challenging Rates.............................15

        C.      Plaintiffs Failed to State RICO or Common Law Fraud Claims ........17

        D.      The False Claims Act (Count I) Allegations Fail to Identify
                Any False Statement Submitted to the United States Government
                and False Statements With Regard to Tax Returns are
                Specifically Excepted From the False Claims Act .............................20

     E.     The Conversion Claim (Count III) Fails to State a Claim ..................23

IV.   CONCLUSION ...........................................................................25

## <u>QUESTIONS PRESENTED</u>

1.      Are all of Plaintiffs' claims barred by the filed rate doctrine?

2.      Are Plaintiffs' RICO (Count I) and fraud (Count II) claims barred by failure to state claims with particularity under Fed. R. Civ. Proc. 9(b)?

3.      Are Plaintiffs' claims under the False Claims Act (Count I) barred because they fail to identify any false statement to the United States Government, and because false statements on tax returns are specifically excluded from the False Claims Act?

4.      Are Plaintiffs' claims for conversion (Count III) barred because there is no allegation that Defendants converted specific funds or personal property?

# CONTROLLING AND MOST APPROPRIATE AUTHORITY

Issue 1:

*Taffet v. S. Co.*, 967 F.2d 1483 (11th Cir. 1992)

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485 (8th Cir. 1992)


Issue 2:

Fed. R. Civ. Proc. 9(b)

*Thomas v. Daneshgari*, No. 13-10378, 2014 WL 584890
    (E.D. Mich. Feb. 14, 2014)

*Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984)

*Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990)


Issue 3:

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)

31 U.S.C. § 3729(d)


Issue 4:

*Sudden Serv. v. Brockman Forklifts*, 647 F. Supp. 2d 811 (E.D. Mich. 2008)

# INDEX OF AUTHORITIES

*Cases*

*Adams v. Fausone Bohn*,
No. 311040 (Mich. App. Jan. 16, 2014).......................................................24

*AFSCME Int'l U. v. Bank One*,
267 Mich. App. 281, 705 N.W.2d 355 (2005) ............................................24

*Arkansas Louisiana Gas Co. v. Hall*,
453 U.S. 571, 101 S. Ct. 2925, 69 L. Ed. 2d 856 (1981) .......................10, 17

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................7

*Attorney Gen. v. Mich. Pub. Serv. Comm'n*,
249 Mich. App. 424, 642 N.W.2d 691 (2002) .............................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................7

*Bender v. Southland Corp.*,
749 F.2d 1205 (6th Cir. 1984) ......................................................................18

*Benoay v. Decker*,
517 F. Supp. 490 (E.D. Mich. 1981) ............................................................19

*Carter v. Subway Store #6319*,
No. 11-15158, 2012 WL 666838 (E.D. Mich. Feb. 29, 2012).....................23

*Check Reporting Services, Inc. v. Michigan Nat'l Bank-Lansing*,
191 Mich. App. 614, 478 N.W.2d 893 (1991) .............................................24

*Citizens Ins. Co. v. Delcamp Truck Ctr., Inc.*,
178 Mich. App. 570, 444 N.W.2d 210 (1989) .............................................24

*Craighead v. E.F. Hutton & Co., Inc.*,
899 F.2d 485 (6th Cir. 1990)........................................................................20

*Detroit Edison Co. v. Mich. Pub. Serv. Comm'n*,
416 Mich. 510, 331 N.W.2d 159 (1982) ......................................................15

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   954 F.2d 485 (8th Cir. 1992) ...............................................................8, 10, 17

*Head v. Phillips Camper Sales & Rental, Inc.*,
   234 Mich. App. 94, 593 N.W.2d 595 (1999) .................................................24

*Keogh v. Chicago & Northwestern Ry. Co.*,
   260 U.S. 156, 43 S. Ct. 47, 67 L. Ed. 183 (1922) ....................................9, 11

*Mich. Bell Tel. Co. v. Mich. Pub. Serv. Comm'n*,
   315 Mich. 533, 24 N.W.2d 200 (1946) ...................................................13, 15

*Mich. Consol. Gas Co. v. Mich. Pub. Serv. Comm'n*,
   264 Mich. App. 424, 691 N.W.2d 29 (2004) .................................................15

*Montana-Dakota Utilities Co. v. Northwestern Public Service Comm'n*,
   341 U.S. 246, 71 S. Ct. 692, 95 L. Ed. 912 (1951) .........................................9

*N. Mich. Land & Oil Corp. v. Pub. Serv. Comm'n*,
   211 Mich. App. 424, 536 N.W.2d 259 (1995) ...............................................13

*Paycom Billing Servs. v. Payment Res. Int'l*,
   212 F. Supp. 2d 732 (W.D. Mich. 2002).......................................................18

*Rennie v. Pentagon Refining Co.*,
   280 Mich. 1, 273 N.W. 325 (Mich. 1937)......................................................24

*Rippy v. Hattaway*,
   270 F.3d 416 (6th Cir. 2001) ........................................................................6

*Sanderson v. HCA—The Healthcare Co.*,
   447 F.3d 873 (6th Cir. 2005).........................................................20, 21, 22

*Square D. Co. v. Niagara Frontier Tariff Bureau*,
   476 U.S. 409, 106 S. Ct. 1922, 90 L. Ed. 2d 413 (1986) ...............................9

*Sudden Serv. v. Brockman Forklifts, Inc.*,
   647 F. Supp. 2d 811 (E.D. Mich. 2008).......................................................25

*Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*,
   45 F.3d 58 (2d Cir. 1995) ............................................................................12

vii

*Taffet v. S. Co.*,
    967 F.2d 1483 (11th Cir. 1992) .................................. 8, 10, 11, 12, 13, 15, 17

*Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
    204 U.S. 426, 27 S. Ct. 350, 51 L. Ed. 553 (1907) ..................................... 8, 9

*Thomas v. Daneshgari*,
    No. 13-10378, 2014 WL 584890 (E.D. Mich. Feb. 14, 2014) ............... 18, 19

*Trail Clinic, PC v. Bloch*,
    114 Mich. App. 700, 319 N.W.2d 638 (Mich. Ct. App. 1982) .................... 24

*United States ex rel. Bledsoe v. Cmty. Health Sys.*,
    501 F.3d 493 (6th Cir. 2007) .......................................................... 21

*United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
    377 F.3d 145 (2d Cir. 2004) ........................................................... 22

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) .......................................................... 21

*Wegoland Ltd. v. NYNEX Corp.*,
    27 F.3d 17 (2d Cir. 1994) ............................................................... 12

*Yuhasz v. Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ....................................................... 21, 22

## Statutes

False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ................................................ 20, 22

Mich. Comp. Laws § 460.1 *et seq.* ........................................................... 13

Mich. Comp. Laws § 460.557 ................................................................. 13

Mich. Comp. Laws § 460.58 ................................................................. 3, 14

Mich. Comp. Laws § 460.59 ................................................................. 14

Mich. Comp. Laws § 460.6(1) .............................................................. 2, 13

Mich. Comp. Laws § 460.6a(1) ............................................................. 2, 13

Mich. Comp. Laws § 460.6a(2) ............................................................... 3

Mich. Comp. Laws § 462.26............................................................................14

Mich. Comp. Laws § 600.2919a......................................................................23

Mich. Comp. Laws § 600.2919a(1)(a)............................................................23

### *Regulations*

MI Admin C R 460.17501 *et seq*....................................................................14

### *Court Rules*

Fed. R. Civ. Proc. 8(a)(2)..............................................................................7

Fed. R. Civ. Proc. 9(b)......................................................................18, 19, 21

Fed. R. Civ. Proc. 12(b)(6) ..............................................................................6

## I.    INTRODUCTION

This is a suit by an employee who was fired because he was incompetent. He also stole a massive amount of data and secretly tape recorded conversations. His amended complaint is 130 pages and 348 paragraphs, full of rambling, vague, cryptic allegations.  He filed a virtually identical complaint with the Michigan Public Service Commission ("MPSC"), but that complaint was dismissed with prejudice.  He now seeks at least $8 billion.

Consumers denies any wrongdoing in its rate-setting process.  Regardless, as shown below, Plaintiffs' amended complaint is completely barred by the filed rate doctrine, which prohibits collateral attack on rates set by state utility agencies.  In addition, dismissal is warranted due to specific defects in each claim.

## II.   STATEMENT OF FACTS

### A.    The Parties

Plaintiff Simeon Anderson is a former employee of defendant Consumers Energy Company ("Consumers") and has allegedly been its customer at various times.  *See* DE# 7, Verified Complaint (1st Amended) ("Am Compl") (attached here as Ex. 1), ¶¶ 10, 14.  Plaintiff Greater True Worship Church (the "Church") is a business customer of Consumers.  *Id*. at ¶ 316.  Anderson and the Church filed this suit on behalf of the United States Government and as a class action on behalf of all Consumers' individual and business customers "for the years 2008 to present, and prior".  *Id*. at ¶ 320.  Collectively, Anderson, the Church, and the

1

parties they allegedly represent will be referred to as Plaintiffs.

Defendant Consumers is a regulated electric and gas utility in Michigan. *Id.* at ¶ 45. Defendants Eric Keaton, Steve Stubleski, and Michael Torrey are employees of Consumers who work in the Electric Rate Department. *Id.* at ¶¶ 34, 36, 38. Anderson reported to Stubleski, who reported to Torrey. Keaton was a co-worker who attempted to train Anderson while he was employed by Consumers.

Plaintiffs allege that Defendants and at least 52 other people (identified in Exhibit A to the Amended Complaint) participated in a vast conspiracy to defraud the MPSC, the federal government, and Consumers' customers for decades. Defendants deny all allegations.

**B.     The Michigan Public Service Commission**

The MPSC is not a party to this suit, but is mentioned in the Amended Complaint well over one hundred times. The MPSC is the state agency "vested with complete power and jurisdiction to regulate all public utilities in the state", including setting rates. Mich. Comp. Laws § 460.6(1). When a public utility, like Consumers, wants to increase its rates, it must first seek approval from the MPSC through the filing of a general rate case. Mich. Comp. Laws § 460.6a(1). After extensive proceedings in the MPSC, including an opportunity for public participation or objection, if the MPSC is satisfied that the increased rate is just and reasonable, it then enters an order setting the new rate. Mich. Comp. Laws §

2

460.6a(2).  In this lawsuit, Plaintiffs seek damages for rates set by the MPSC based upon allegedly false evidence, data, and filings Consumers submitted in general rate cases from at least 2006 to the present.[1]  Am Compl, ¶¶ 44, 325.

### C.   Anderson's Legal Actions Against Defendants

In May 2012, after nine months of employment, Consumers terminated Anderson.  *Id.* at ¶¶ 10–11.  Anderson then filed a wrongful termination lawsuit against Consumers, Stubleski, and Torrey on July 20, 2012.  *Id.* at ¶ 12.  Consumers filed a counterclaim against Anderson for wrongfully taking 700 million pages of confidential data from Consumers.  *Id.* at ¶ 13.  That lawsuit is currently pending in the Jackson County Circuit Court, Case No. 12-2235-CD.

Concurrently, on July 20, 2012, Anderson filed a complaint case (U-17062) at the MPSC ("MPSC Suit") against Consumers.[2]  In it, he alleged that review of the stolen data led him to believe that Consumers had "fraudulently derived electricity rates" in its 2011 general rate case, No. U-16794".  *Id.* at ¶¶ 13–14; *see also* Ex. 2, MPSC Complaint.  Plaintiffs rely upon the same stolen data in this suit (Am Compl, ¶ 279) and seek the same type of relief: "refunding monies

---

[1]   Plaintiffs are challenging all of the following rate proceedings: U-17087, U-16794, U-16191, U-15645, U-15245, U-14347, U-17197, U-16855, U-16418, U-15986, U-15506, and U-15190.

[2]   A "complaint case" is one in which a customer may (among other things) collaterally challenge the MPSC's rate orders.  *See* Mich. Comp. Laws § 460.58.

fraudulently collected by Consumers Energy." Ex. 2, p. 2. [3]

The MPSC Suit did not go far. Anderson was ordered to file an amended complaint and prefiled testimony in support of his claims by December 10, 2012. *See* Ex. 3, Excerpt of MPSC Hrg Tr. Anderson failed to do so, instead withdrawing his complaint, and the suit was dismissed with prejudice on January 17, 2013. Ex. 4, MPSC Order of Dismissal.[4]

### D.   This Lawsuit

Anderson filed this lawsuit a month after his MPSC Suit was dismissed. *See* DE# 1. In November, the federal government filed its notice declining to intervene with regard to the False Claims Act allegations. DE# 4. Plaintiffs thereafter filed the 130-page, 348-paragraph Amended Complaint on February 27, 2014.

The Amended Complaint is four counts, which Plaintiffs characterize as:

| | |
|---|---|
| Count I | Violation of Federal False Claims Act qui tam and (RICO) Racketeer Influenced and Corrupt Organizations Act |
| Count II | Fraud – Intentional and/or Constructive Fraud, and Conspiracy and Concert of Actions |

---

[3]   Plaintiffs admit that the over 700 million pages of data Anderson stole from Consumers are the alleged support for his allegations in this lawsuit. Am Compl, ¶¶ 13, 279. Plaintiffs further admit that they only came to the conclusions in the Amended Complaint after reviewing "nearly a terabyte of data" (*Id*. at ¶ 19) and that Anderson is the only person who possesses and can articulate the magnitude and details of the alleged fraud. *Id*. at ¶¶ 283, 285.

[4]   At the time the MPSC Suit was pending, Consumers had just filed general rate case number U-17087. Anderson could have raised his alleged concerns regarding allegedly fraudulent data in that case, but he chose not to do so.

Count III        Conversion

Count IV        Class Action Allegations

Specifically, Plaintiffs allege that "[f]rom 2006 to 2013, individual gas and electric customers, gas and electric Customer Classes and the MPSC were defrauded by Defendants . . . [i]n its *rate cases* and proceedings, testimony, audit and discovery responses and other regulatory filings *submitted to the MPSC*" regarding the amounts of gas and electricity actually used and Consumers' associated costs for that use.  Am Compl, ¶¶ 44, 325 (emphasis supplied).  Plaintiffs then contend that the allegedly falsified cost data was used "to design improper rates and charges" for residential and small business class electric customers (*Id*. at ¶¶ 46–47), and that "[t]hose actions by Defendants caused a fraudulent monetary rise to individual customer bills and the electricity rates for applicable electric customer classes." *Id.* at ¶ 48; *see also id*. at ¶¶ 213–14, 218–30, 235, 238.   In the next 85 pages, Plaintiffs purport to explain the type of data that was allegedly falsified and how that data was allegedly used in the rate-making process.   *Id*. at ¶¶ 46–206. Plaintiffs characterize the alleged fraud as an effort to "mislead MPSC regulators . . . in order to defraud residential customers **through the regulatory process of the MPSC.**"[5]   Am Compl, ¶ 50 (emphasis supplied).  Plaintiffs spend

_____

[5]  Plaintiffs also expressly allege that Defendants mislead or defrauded the MPSC at ¶¶ 57, 60, 64, 68, 74, 78, 80, 87, 97, 113, 114, 116–22, 132, 141, 145, 146, 149, 178, 192, 208, 211, 218, and 238.

over 30 pages of the Amended Complaint claiming that Defendants carried out the alleged fraud by failing to fully respond to discovery requests issued in the MPSC general rate cases (*Id.* at ¶¶ 129–44, 171), objecting to discovery requests, and misleading the court in his employment suit (*Id.* at ¶¶ 239–78).

In summary, each of the counts of the Amended Complaint seek damages for the same alleged transgression: Plaintiffs claim that Defendants submitted falsified testimony, evidence, and data to the MPSC and withheld other information from the MPSC in general rate cases so that the MPSC would approve artificially higher rates for gas and electricity.  The damages sought by Plaintiffs is the difference between the amounts customers paid to Consumers as a result of the various rates approved in the twelve general rate cases in effect from at least 2006 to the present, and the amounts that would have been paid under the rates set by the MPSC had Consumers not allegedly submitted falsified information.

## III.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) "allow[s] a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).  Under 12(b)(6), plaintiff must allege a claim for relief that is "plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citations omitted).[6]

### B.   Plaintiffs' Amended Complaint Should Be Dismissed Under the Filed Rate Doctrine

Plaintiffs' claims are all based on a contention that Consumers made fraudulent misrepresentations "[i]n its rate cases and proceedings" before the MPSC (Am Compl, ¶ 44), which caused damage to customers in the form of "a fraudulent monetary rise to individual customer bills and the electricity rates for applicable electric customer classes."  *Id*. at ¶ 48.  That is, Plaintiffs claim they have a legal right to have been charged a lower rate and they were damaged by having paid the rates they were actually charged.

Plaintiffs, however, admit they were charged the "MPSC approved gas and electricity rates".  *Id*. at ¶ 45.  Under Michigan law, they do not have a right to be charged any rate other than the MPSC approved gas and utility rates.  Plaintiffs do

---

[6]   In addition, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim".  The Amended Complaint flouts this most basic pleading requirement.  Plaintiffs' complaint contains 130 pages, with 348 paragraphs, and it is filled with heaps of incoherent, repetitive detail.  It is obviously not "a short and plain statement."

**not** have a legal right to be charged a lower rate. Consequently, neither Plaintiffs nor those who they purport to represent have suffered any legally cognizable injury by having paid the MPSC-authorized rates. Since all of Plaintiffs' claims are based on the alleged improper procurement of excessive rates, all of Plaintiffs' claims fail as a matter of law.

### 1.    The Filed Rate Doctrine

Under the "filed rate doctrine", federal courts have repeatedly confirmed that claims such as those Plaintiffs assert must be dismissed for failure to state a claim on which relief can be granted. The filed rate doctrine "recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Taffet v. S. Co.*, 967 F.2d 1483, 1490 (11th Cir. 1992). The doctrine bars recovery by those who claim injury by virtue of having paid a rate so established and "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir. 1992).

The filed rate doctrine was established in *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S. Ct. 350, 51 L. Ed. 553 (1907), in which the Supreme Court held that a shipper could not maintain an action against a common carrier for overcharging because "the rate collected and complained of was the rate

stated in the schedule filed with the Interstate Commerce Commission . . . ." *Id.* at 436. An action for damages was "wholly inconsistent with the administrative power conferred upon the Commission". *Id.* at 440–41.

The Supreme Court has consistently reaffirmed the filed rate doctrine. *See Keogh v. Chicago & Northwestern Ry. Co.*, 260 U.S. 156, 43 S. Ct. 47, 67 L. Ed. 183 (1922) (plaintiff could not maintain an antitrust claim where the asserted injury related to paying the rate approved by the ICC); *Square D. Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S. Ct. 1922, 90 L. Ed. 2d 413 (1986) (even if the allegations of price-fixing were true, the plaintiff as a matter of law had no legally-cognizable claim to avoid paying the rate approved by the ICC).

Notably, in *Montana-Dakota Utilities Co. v. Northwestern Public Service Commission*, 341 U.S. 246, 71 S. Ct. 692, 95 L. Ed. 912 (1951), the Supreme Court held that a claim of damages for fraudulent conduct in obtaining excessive electric utility rates was not a justiciable question because the statute committed the issue of rates to the Federal Power Commission:

> To reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission. It is not the disembodied "reasonableness" but that standard when embodied in a rate which the Commission accepts or determines that governs the rights of buyer and seller . . . [Petitioner] can claim no rate as a legal right that is other than the filed rate[.]

*Id.* at 251.

Also significant is *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577,

9

101 S. Ct. 2925, 69 L. Ed. 2d 856 (1981), where the Supreme Court held that the filed rate doctrine forbids a state court from calculating damages in a breach of contract action based on an assumption that the Federal Energy Regulatory Commission would have approved a different rate if it had been presented with different information:

> No matter how the ruling of the Louisiana Supreme Court may be characterized, they argue, **it amounts to nothing less than the award of a retroactive rate increase based on speculation about what the Commission might have done had it been faced with the facts of this case. This, they contend, is precisely what the filed rate doctrine forbids. We agree.**

453 U.S. at 578–79 (emphasis supplied).

### 2. The Filed Rate Doctrine Applies to State Rate-Making

The "rationale underlying the filed rate doctrine applies whether the rate in question is approved by a federal or state agency." *H.J. Inc.*, 954 F.2d at 494. In *H.J. Inc.*, similar to the present case, the court affirmed dismissal of a RICO class action to recover damages relating to allegedly fraudulent telephone rates approved by the Minnesota Public Utilities Commission. The plaintiff class alleged that the telephone utility bribed members of the commission to secure a proposed rate increase. Nonetheless, the court affirmed dismissal because "the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." *Id.* at 489.

Similarly, in *Taffet*, 967 F.2d at 1494, the court held that the filed rate

10

doctrine "applies with equal force to preclude recovery under RICO whether the rate at issue has been set by a state rate-making authority or a federal one." Indeed, *Taffet* is precisely on point and dispositive of claims asserted by Plaintiffs in this case. *Taffet* involved customers in two consolidated cases who sought to pursue RICO actions on behalf of electric utility customers in Georgia and Alabama. In *Taffet*, just like the present case, the customers alleged that the electric utilities had fraudulently obtained rate increases by making false statements in rate applications to the public utility commission, which resulted in customers having to pay "excessive and illegal charges paid for electrical utility services." *Id.* at 1487.

> The Eleventh Circuit, sitting *en banc*, unanimously affirmed dismissal:
>
> The rate-setting schemes in both Alabama and Georgia are **incompatible with a rate-payer's cause of action to recover damages measured by the difference between the filed rate and the rate that would have been charged absent some alleged wrongdoing. Allowing consumers of the Utilities' services to recover damages for "fraudulent" rates or otherwise "erroneous" rates would disrupt greatly the states' regulatory schemes and, in the end, would cost consumers dearly.** For the appellants in these cases to recover . . . [r]egardless of what the PSC has determined is a reasonable rate, a trial court would be empowered to set, in effect, a new rate.
>
> . . .
>
> The appellants in the instant cases paid utility rates established by the PSCs. They had no legal right to pay any other rate. Since "[i]njury implies violation of a legal right," *Keogh*, 260 U.S. at 163, 43 S. Ct. at 49, the appellants suffered no legally cognizable injury by virtue of paying the filed rate.

967 F.2d at 1491, 1494 (emphasis supplied).

Other federal appellate courts have rejected similar claims. *See Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995) (damage action by consumer group against water utility is barred by filed rate doctrine despite carrier's fraud during rate-making process); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 22 (2d Cir. 1994) (filed rate doctrine barred class action fraud and RICO claims against telephone carriers that provided the FCC with misleading information to gain approval of proposed filed rate).

### 3.    The Filed Rate Doctrine Bars Plaintiffs' Claims

The *Taffet* court concluded that there was no judicially-cognizable wrong or injury because the rate-making processes in that case contained the following features: regulation and setting of utility rates was purely a legislative function; the state legislatures established elaborate administrative schemes to ensure that utility rates were just and reasonable; the public service commissions had exclusive authority to set electrical power rates; to change an existing rate, the utilities had to file a new rate schedule with the commissions; upon a ratepayer's written complaint that a rate was unfair, the commissions were required to investigate the reasonableness of the challenged rate; if the rate-payer was dissatisfied with the disposition of his administrative complaint, he had the right to appeal the commissions' actions to the states' courts; the states' courts were empowered to

ensure that the commissions carried out their regulatory function within constitutional limits, but were neither allowed to "make rates nor substitute their judgment" for that of the commissions; and the state judiciaries had no authority to set utility rates. *Id.* at 1490–91.

Michigan has all these features warranting application of the filed rate doctrine. First, regulation of utilities and setting of utility rates is purely a legislative function. *Mich. Bell Tel. Co. v. Mich. Pub. Serv. Comm'n*, 315 Mich. 533, 547, 24 N.W.2d 200, 205–06 (1946). Second, Michigan has an elaborate administrative system to ensure that rates are just and reasonable for the affected utilities and for the public. Mich. Comp. Laws § 460.1 *et seq.*; *see* Mich. Comp. Laws § 460.557. Moreover, the MPSC "is vested with complete power and jurisdiction" to regulate public utilities and their rates. Mich. Comp. Laws § 460.6(1). The MPSC has exclusive jurisdiction to set rates and determine what rate is just and reasonable ("neither too high nor too low, neither exorbitant nor confiscatory"). *N. Mich. Land & Oil Corp. v. Pub. Serv. Comm'n*, 211 Mich. App. 424, 443, 536 N.W.2d 259 (1995). Further, a utility may not raise its rates without seeking approval from the MPSC. Mich. Comp. Laws § 460.6a(1). The rate-making process mandates that rate-payers be provided notice and an opportunity to challenge any changes in rates at a hearing. *Id.* Additionally, rate-payers have the opportunity to file a written complaint with the MPSC challenging existing rates.

13

Mich. Comp. Laws § 460.58; MI Admin C R 460.17501 *et seq*. The MPSC has the duty to investigate the reasonableness of the challenged rate. Mich. Comp. Laws § 460.58. Any rate order entered by the MPSC may be appealed to the Michigan Court of Appeals. Mich. Comp. Laws §§ 460.59, 462.26. On appeal, the rates prescribed by the MPSC are presumed to be reasonable. *Attorney Gen. v. Mich. Pub. Serv. Comm'n*, 249 Mich. App. 424, 428, 642 N.W.2d 691 (2002). The courts will only overrule an order of the MPSC if there is "clear and satisfactory evidence" that a challenged order was "based on an erroneous interpretation or application of the law" or "if it is not supported by the evidence," but courts cannot set rates or substitute their judgment for that of the MPSC. *Id*. at 428–29.

Thus, in Michigan, as in Georgia and Alabama, ratepayers like Plaintiffs have no right to pay any rate other than the one established by the MPSC. As a result, the federal courts cannot adjudicate any claim that a different rate should have been charged.

Plaintiffs complain that they could not obtain the relief they wanted in the MPSC because the MPSC cannot order a retroactive rate-decrease. Am Compl, ¶¶ 17, 341. But the courts cannot do this either.

> Under our statutes, so long as the rates established by the commission are in force, they are presumed to be reasonable, and neither the commission nor the courts have power retroactively to declare such established rates unreasonable, and thus permit the recovery of damages to the extent of the overplus paid by a shipper or an undercharge collected by the carrier.

14

*Mich. Bell Tel. Co.*, 315 Mich. at 551. Moreover, as the court explained in *Taffet*, it does not matter that the state utility commissions cannot "retroactively declar[e] filed rates illegal or [award] reparations for excesses paid by consumers" (967 F.2d at 1493), because allowing damage awards for "erroneous" rates would undermine the state's regulatory scheme.[7]

In short, Plaintiffs' sole redress for alleged fraud is with the MPSC. Since allowing Plaintiffs to recover damages for "fraudulent" rates would undermine Michigan's established regulatory scheme, their claims are barred as a matter of law under the filed rate doctrine.

### 4.    Plaintiffs Cannot Save Their Amended Complaint By Claiming They Are Not Challenging Rates

Plaintiffs tacitly acknowledge that the filed rate doctrine bars their claims seeking to recover the difference between an MPSC approved rate and some other rate they claim would have been set absent fraud. They do so simply by

---

[7] There is a way to adjust future rates if it is found that improper excessive rates were charged in the past. *See Detroit Edison Co. v. Mich. Pub. Serv. Comm'n*, 416 Mich. 510, 523, 331 N.W.2d 159, 164 (1982) ("previously set rates cannot be changed to correct for the error; the only step that the MPSC can take is to prospectively revise rates in an effort to set more appropriate ones"); *Mich. Consol. Gas Co. v. Mich. Pub. Serv. Comm'n*, 264 Mich. App. 424, 436, 691 N.W.2d 29 (2004). As the *Taffet* court concluded: "[g]iven that the PSCs are equipped to take the defendants' fraud into account in setting future rates, a court's award of damages against a utility for "fraudulent rate-making" would be unnecessarily disruptive to the state's scheme of utility regulation." 967 F.2d at 1494.

pretending they are not challenging the rates that have been approved by the MPSC. Of course, that is just a pleading artifice, added in an attempt to avoid certain dismissal under the filed rate doctrine. Their complaint is certainly a challenge to rates and charges fixed by the MPSC, despite their effort to disguise it. In paragraph 45, they assert: "Defendants' revenues both real and inflated/ fabricated were generated by charging MPSC approved gas and electricity rates and charges, *which are not being challenged in this Complaint* and have been developed and designed using falsified data, for each unit of electricity and gas, both real and fabricated, for years 2006 through 2013." (Emphasis supplied). But the allegation is self-contradictory. Although Plaintiffs say the rates "are not being challenged in this Complaint", the immediately following words, "and have been developed and designed using falsified data," are clearly a challenge to the rates.

The filed rate doctrine holds that damage actions concerning utility rates are impermissible and inconsistent with the state regulatory process—regardless of whether the Plaintiffs pretend they are not questioning the established rates. Additionally, Plaintiffs' claimed fraud is a fraud on the MPSC.[8] As the cases discussed above make clear, any award of damages against a utility for

---

[8] The Amended Complaint alleges false statements, designed to "mislead MPSC regulators," "through the regulatory process of the MPSC," in the "rate cases," resulting in "improper rates", which "caused a fraudulent monetary rise to individual customer bills." Am Compl, ¶¶ 44–50. This is clearly a direct challenge to the MPSC filed rates.

"'fraudulent rate-making' would be unnecessarily disruptive to the state's scheme of utility regulation." *Taffet*, 967 F.2d at 1494.

In *H.J. Inc.*, *supra*, just as in the present case, the plaintiffs tried to avoid the filed rate doctrine by arguing that they were not asking the court to engage in rate-making, but simply seeking damages due to the alleged RICO violations. 954 F.2d at 492. But the Court rejected this specious argument: "the H.J. class's claim is simply that its members have been injured because they paid too much for telephone services . . . a damage concept that falls squarely within the filed rate doctrine." *Id*. The court rebuffed this ploy to try to disguise their claims and circumvent the filed rate doctrine:

> Despite its urging the contrary, the H.J. class seeks damages that necessarily and plainly challenge the rates previously approved by the Commission. . . . As the Supreme Court observed in *Arkansas Louisiana Gas*, the damages the H.J. class seeks "amount[] to nothing less than the award of a retroactive rate increase based on speculation about what the Commission might have done had it been faced with the facts of this case." 453 U.S. at 578–79, 101 S. Ct. at 2930–31.

*Id*. at 493. The same is true here, since any damage award in this case would of necessity be based on speculation about what the MPSC might have done had it been faced with the facts as alleged by Plaintiffs.

## C.     Plaintiffs Failed to State RICO or Common Law Fraud Claims

In Count I of their Amended Complaint, Plaintiffs allege that Defendants engaged in a RICO conspiracy under Section 1962(d) to defraud customers, the

17

State of Michigan, and the United States Government.  Am Compl ¶¶ 25–26.  In Count II, Plaintiffs allege that Defendants also committed common-law fraud through this scheme.  Plaintiffs' RICO and common-law fraud claims should be dismissed because Plaintiffs failed to plead them with particularity.

To establish a RICO conspiracy under Section 1962(d) Plaintiffs must allege that Defendants "conspire[d] to violate any of the provisions of subsection (a), (b), or (c) of this section."  Here, Plaintiffs allege that Defendants conspired to violate subsection (c).  *See* Am Compl, ¶ 27.  To support a violation under subsection (c), Plaintiffs must allege that defendants engaged in a criminal predicate act, such as mail or wire fraud.  *Paycom Billing Servs. v. Payment Res. Int'l*, 212 F. Supp. 2d 732, 735 (W.D. Mich. 2002).

Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud" and "[c]ourts have repeatedly held that in RICO cases alleging mail fraud and wire fraud as the 'predicate acts', the underlying fraudulent activities must be pled with particularity."  *Thomas v. Daneshgari*, No. 13-10378, 2014 WL 584890, *7 (E.D. Mich. Feb. 14, 2014) (Ex. 5).

"To satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the (misrepresentations) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).  "Courts rigorously enforce Fed. R. Civ. P. 9(b)'s pleading requirements in RICO cases in which the 'predicate

acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed . . . and when and how each mailing . . . furthered the fraudulent scheme." *Thomas*, 2014 WL 584890 at *7; *see also Benoay v. Decker*, 517 F. Supp. 490 (E.D. Mich. 1981), *aff'd* 735 F.2d 1363 (6th Cir. 1984) (to satisfy Rule 9(b) "[t]he complaint . . . may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant . . . is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged").

Here, Plaintiffs' allegations are conclusory, incoherent, and fall far short of these requirements. Plaintiffs allege that Defendants engaged in an elaborate fraudulent scheme wherein they hired a firm to develop software to manipulate data, which somehow enabled them to trick the MPSC into approving excessive rates. Am Compl, ¶ 120. Plaintiffs allege that they "had to review nearly a terabyte of data in order to finally come to the *conclusions* within this Complaint." *Id*. at ¶ 19 (emphasis supplied). But that is exactly what Plaintiffs' fraud allegations consist of—unsupported, vague *conclusions*. For over 130 pages, discussing the supposed fraudulent manipulation, Plaintiffs do not once describe the falsified data or explain how it deceived the MPSC. They also spend over 15 pages simply listing file names and spreadsheet entries that they allege, in conclusory fashion, "summarize the fraudulent data . . . used in the development of

19

their allocation schedules". But they do not bother to put forth any of these facts showing *how* the data was fraudulent. Am Compl ¶ 133.

These conclusory allegations fail to state with any particularity how defendants ultimately defrauded Plaintiffs. Therefore, Plaintiffs have failed to plead the predicate act of mail fraud and common-law fraud. Moreover, because Plaintiffs have failed to allege any predicate acts to support a violation of 1962(c), their RICO conspiracy claim necessarily fails. *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990).

### D. The False Claims Act (Count I) Allegations Fail to Identify Any False Statement Submitted to the United States Government and False Statements With Regard to Tax Returns are Specifically Excepted From the False Claims Act

The False Claims Act, 31 U.S.C. §§ 3729 *et seq*. ("FCA"), makes the submission of false or fraudulent claims to the federal government illegal. *Sanderson v. HCA—The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2005). The "*qui tam*" provision found in § 3730(b) of the FCA authorizes private individuals, in limited circumstances, to sue on the government's behalf. *Id.*

The elements of a FCA claim are: (1) defendant made a false statement or created a false record and did so with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; (2) defendant submitted a claim for payment directly to (or through others to) the federal government; (3) defendant's false statement was made for the purpose of getting a false or

fraudulent claim paid or approved by the government; and (4) the false statement was material to the government's decision to make the payment. *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504–05 (6th Cir. 2008).

Because the essence of a *qui tam* claim is fraud in filing a claim against the government, the claim must comply with the particularity requirements of Federal Rules of Civil Procedure 9(b). *See United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007) ("pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)"). And in order to satisfy Rule 9(b)'s heightened pleading requirements, a *qui tam* claim must, at a minimum, allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government]; and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson*, 447 F.3d at 876; *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

Plaintiffs' purported FCA claim satisfies none of these minimum requirements. The Amended Complaint does not identify any specific claim submitted by Consumers to the government, the date of such claim, or its contents. In short, Plaintiffs fail to specifically identify and detail a single false claim

21

allegedly submitted; instead they simply allege that Consumers has defrauded the government out of billions of dollars. *See* Am Compl, ¶¶ 20, 22. This failure to identify and detail specific false claims submitted by Consumers to the government, mandates dismissal of the FCA claim. *Sanderson*, 447 F.3d at 878–79; *Yuhasz*, 341 F.3d at 564.

But even if Plaintiffs satisfied these pleading requirements, their FCA claim must still be dismissed. The only Consumers' submission to the federal government that is possibly alluded to in the Amended Complaint, and even then, only vaguely and elliptically, is Consumers' alleged false tax filings. Without ever identifying and detailing the nature, date, and content of any such submission, Plaintiffs allege that Consumers has, by "overstat[ing] its purchased power expense, fuel expense, depreciation expense and other expenses outlined in above paragraphs", defrauded the government "out of $1.2 Billion in U.S. federal income taxes." Am Compl ¶¶ 292–95. This tax claim not only fails because it lacks the specificity required for any FCA claim, it also fails because such tax claims are expressly barred by Section 3729(d) of the FCA, which states:

> (d) **Exclusion**. This section does not apply to claims, records or statements made under the Internal Revenue Code of 1986.

*See United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 152–53 (2d Cir. 2004) (tax claims are expressly excluded by the FCA); *Carter v. Subway Store #6319*, No. 11-15158, 2012 WL 666838, *6 (E.D. Mich. Feb. 29,

2012) (Ex. 6) (tax-related claims are barred by the statute).

In short, the allegations under the FCA fail as a matter of law.

### E.      The Conversion Claim (Count III) Fails to State a Claim

Count III asserts a claim for statutory conversion under Mich. Comp. Laws § 600.2919a.   Plaintiffs allege that Defendants committed statutory conversion because they allegedly "received and/or aided in the acquisition and/or concealment of all Plaintiffs converted property" and "did wrongfully exert dominion and control over all Plaintiffs' money/property by paying their agents, employees, co-conspirators and stock and/or shareholders with those converted funds."  Am Compl ¶¶ 307, 308, 313.

The Amended Complaint alleges that Defendants fooled the MPSC and overcharged Plaintiffs.  But it fails to state a claim for conversion because it does not allege that Defendants stole or embezzled or are withholding any specific property, funds, or money belonging to Plaintiffs.

Mich. Comp. Laws § 600.2919a(1)(a) allows persons damaged as a result of "[a]nother person's stealing or embezzling property or converting property to the other person's own use" to recover three times "the amount of actual damages sustained, plus costs and reasonable attorney fees".  Plaintiffs do not allege that anyone stole or embezzled their property; they allege that it was converted.  "To support an action for conversion of money, defendants must have had an obligation

23

to return **the specific money** entrusted to their care." *Adams v. Fausone Bohn*, No.
311040, slip op. at 3 (Mich. App. Jan. 16, 2014) (per curiam) (Ex. 7) (emphasis
supplied), *citing Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94,
111, 593 N.W.2d 595 (1999); *accord AFSCME Int'l U. v. Bank One*, 267 Mich.
App. 281, 295 fn. 6, 705 N.W.2d 355 (2005) (finding no conversion because
"McIntyre and Estep had no obligation to return any specific cache of money.");
*see also Citizens Ins. Co. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575,
444 N.W.2d 210 (1989) ("an action cannot be maintained for conversion of money
unless there is an obligation on the part of the defendant to return the specific
money entrusted to his care.")

As Judge Battani of this District ruled:

> To support an action for conversion of money, the defendant must
> have an obligation to return the specific money entrusted to his care.
> *Check Reporting Services, Inc. v. Michigan Nat'l Bank-Lansing*, 191
> Mich. App. 614, 478 N.W.2d 893, 900 (1991). It is clear that when
> the dispute is over moneys owed, conversion is only applicable in
> cases involving money that is the property of one party but held by
> another party (e.g., bank accounts, trusts, etc.) which is then
> wrongfully taken. *See Trail Clinic, PC v. Bloch*, 114 Mich. App. 700,
> 319 N.W.2d 638 (Mich. Ct. App. 1982) (allowing a conversion claim
> when one party appropriated checks payable to another party); *Rennie
> v. Pentagon Refining Co.*, 280 Mich. 1, 273 N.W. 325 (Mich. 1937)
> (conversion found where one party appropriated funds from another
> party's brokerage account). Here, the facts do not support the claim
> of conversion with regards to either the breach of contract or the
> transfer of funds and assets. Plaintiff did not entrust specific moneys
> to the care of Defendant; instead, Plaintiff and Defendant engaged in
> the sale and purchase of goods according to an express contract.
> Because Plaintiff's cause of action arises from the breach of the

contract (and not the appropriation of specific funds in violation of a separate legal duty), Plaintiff's conversion claim fails."

*Sudden Serv. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815–16 (E.D. Mich. 2008).

Plaintiffs seek damages because Defendants allegedly tricked the MPSC in the rate proceeding and overcharged the Plaintiffs. But the Amended Complaint does not allege that the Defendants misappropriated specific funds or specific personal property of the Plaintiffs. Accordingly, the conversion claim must be dismissed.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendants request that this Court grant their motion and dismiss Plaintiffs' claims with prejudice.

Respectfully submitted,

BARRIS, SOTT, DENN & DRIKER, PLLC

By: /s/ Melonie L.M. Stothers
    Sharon M. Woods (P22542)
    Melonie L. M. Stothers (P65344)
Attorneys for Defendants
211 W. Fort St., 15th Fl., Detroit, MI 48226
(313) 965-9725
Dated: May 2, 2014    E-Mail: swoods@bsdd.com, mstothers@bsdd.com

---

[9] The Michigan rule (limiting conversion to taking specific personal property) makes sense. Otherwise every breach of contract suit by a purchaser who paid money would *ipso facto* also be a conversion claim warranting treble damages and attorney fees.

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2014, I caused the Motion of Defendants Consumers Energy Company, Eric Keaton, Steve Stubleski, and Michael Torrey to Dismiss and Strike; Brief in Support; and this Certificate of Service to be electronically filed with the Clerk of the Court using the ECF system. Parties may access this filing through the Court's system.

BARRIS, SOTT, DENN & DRIKER, PLLC

By: /s/ Melonie L.M. Stothers
     Sharon M. Woods (P22542)
     Melonie L. M. Stothers (P65344)
Attorneys for Defendants
211 West Fort Street, 15th Floor
Detroit, Michigan 48226-3281
(313) 965-9725
E-Mail:swoods@bsdd.com, mstothers@bsdd.com

438937v8

26